1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                       **CENTRAL DISTRICT OF CALIFORNIA**

10

11  DEBORAH R. WHALEY,            )   NO. CV 12-04888 SS
                                  )
12              Plaintiff,        )
                                  )
13        v.                      )
                                  )   **MEMORANDUM DECISION AND ORDER**
14  CAROLYN W. COLVIN,            )
    Acting Commissioner of the    )
15  Social Security Administration, )
                                  )
16              Defendant.        )
    _____)

17

18                               **I.**

19                           **INTRODUCTION**

20

21       Deborah Whaley ("Plaintiff") brings this action seeking to overturn

22  the decision of the Commissioner of the Social Security Administration

23  (hereinafter the "Commissioner" or the "Agency") denying his application

24  for Supplemental Security Income benefits ("SSI").[1]   The parties

25  _____

26       [1]   The Court notes that Carolyn W. Colvin became the Acting
    Commissioner of the Social Security Administration on February 14, 2013.
27  Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil
    Procedure, the Court orders the that the caption be amended to
28  substitute Carolyn W. Colvin for Michael J. Astrue as the defendant in
    this action.

consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge.   For the reasons stated below, the decision of the Agency is REVERSED and the matter REMANDED.

## II.

### PROCEDURAL HISTORY

Plaintiff filed an application for SSI on January 29, 2007. (Administrative Record ("AR") 22).   Plaintiff contended that she was disabled due to cervical stenosis and an inability to raise her dominant, left arm.   (AR 123).   Plaintiff alleged a disability onset date of May 1, 2006.   (Id.).   The Agency initially denied Plaintiff's application on May 30, 2007.   (AR 73-77).   Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").   (AR 78).   On December 11, 2008, a hearing was held before ALJ Robert S. Eisman.   (AR 32-68).   Plaintiff was represented by counsel and testified at the hearing.   (AR 34-57).   A vocational expert ("VE") also testified.   (AR 57-67).

On December 24, 2008, the ALJ issued a decision denying benefits. (AR 22-29).   On February 9, 2009, Plaintiff sought review of this decision before the Appeals Council.   (AR 5).   On January 14, 2010, the Appeals Council denied review.   (AR 1).   Plaintiff then filed a civil action, which resulted in a Memorandum Decision and Order reversing the ALJ's determination and remanding the action for further proceedings. (AR 505-31).   The Court concluded that deviation between the VE's testimony and the Dictionary of Occupational Titles ("DOT") description

of work the VE determined Plaintiff could perform created an unresolved inconsistency that required remand for further administrative proceedings. (AR 516). Specifically, the Court found that the ALJ failed to explain deviations from the DOT in the VE's testimony and failed to elicit testimony from the VE regarding the deviation. (AR 517-24).

The Court instructed the ALJ that, on remand, he "must determine whether Plaintiff can actually perform the requirements of the positions identified given the limitations imposed by her left upper extremity, or must elicit further testimony from a VE on this topic, or must otherwise reevaluate his decision." (AR 524).

Pursuant to this Court's remand, the Appeals Council vacated the ALJ's decision on November 13, 2010. (AR 534). On April 27, 2011, a second hearing was held before the ALJ. (AR 420-43). Plaintiff testified at the hearing. (AR 422-36). A vocational expert also testified. (AR 430-41). The ALJ found that Plaintiff was disabled as of July 7, 2009 but that prior to that date, Plaintiff was capable of performing her past relevant work. (AR 376). According to the ALJ, "[b]eginning on July 7, 2009, [Plaintiff's] residual functional capacity has prevented [Plaintiff] from being able to perform past relevant work." (AR 377). The ALJ also found that "[a]s of July 7, 2009, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 378). The ALJ concluded that "[Plaintiff] was not disabled prior to July 7, 2009,

1  . . . but became disabled on that date and has continued to be disabled
2  through the date of [the ALJ's decision]," and the ALJ awarded benefits
3  beginning on that date.  (AR 378-79).  Plaintiff requested judicial
4  review by filing the instant action on June 19, 2012.

5

6                                  **III.**
7                           **FACTUAL BACKGROUND**

8

9      Plaintiff, who was fifty-five at the time of the second ALJ
10 hearing, has an eleventh-grade education and is able to communicate in
11 English.  (AR 36-37, 424).  Plaintiff does not have a GED.  (AR 449).
12 In the past, Plaintiff worked as a counter person at a cheese shop,
13 cutting and wrapping cheese, stocking shelves, washing dishes, and
14 manning the cash register.  (AR 37).  Plaintiff also worked as a
15 manicurist, telemarketer, and a chef without formal training.  (AR 38,
16 432, 434, 435).  During the first hearing, in December of 2008,
17 Plaintiff stated that she had not worked or sought work since May of
18 2006.  (AR 39).  During the second hearing, Plaintiff stated that she
19 had not worked since the first hearing.  (AR 429).

20

21     During the second hearing, Plaintiff also stated that her cervical
22 stenosis and inability to raise her dominant, left arm had not improved.
23 (AR 425).  According to Plaintiff, "they definitely have not gotten
24 better, in some regards they're the same, and in some they're worse."
25 (Id.).  Plaintiff stated that her arm "shakes more, it locks up more"
26 and that her index and ring fingers sometimes turn white for several
27 hours, "like there's no circulation at all there."  (Id.).  Plaintiff

28
                                    4

also stated that she has continued pain management treatment, has not received any kind of occupational therapy, and has continued physical therapy exercises although she is no longer under the care of a physical therapist. (AR 429).

## A. **Plaintiff's Medical History**

### 1. Physical Examinations

Plaintiff asserts that her health problems began in 2005 with a pain in her back and radiating pain in her left arm. (AR 43). According to Plaintiff, her condition steadily worsened until April 2006, when it became so severe that she had no feeling in her left arm and could not move it. (Id.). In May 2006, Plaintiff was referred to Harbor-UCLA Medical Center ("Harbor"), where she was diagnosed with "disk osteophyte complex [with] severe NF [neural foraminal] stenosis on the left [at] both C4-5 and C5-6" disc spaces. (AR 195). Plaintiff underwent an anterior cervical discectomy and fusion that same month, after which she reported the pain "got better" and saw some improvement in her bicep strength. (AR 158, 192). Nonetheless, in August 2006, Plaintiff still reported continuing pain in her back shoulder. (Id.). Later that same year, Plaintiff began physical therapy. (AR 190). In December 2006, a Harbor physician noted that Plaintiff's left hand strength showed "significant improvement," but still recommended continued disability status due to Plaintiff's "nonfunctional" left upper arm. (AR 185). In April 2007, a Harbor physician noted that although Plaintiff "can move her fingers, her hand is weak and she

5

1   cannot hold things.  Her [left] arm is so weak she cannot lift anything.

2   [Plaintiff] has had [occupational therapy] for exercises but has not had

3   improvement in function.  She is very depressed . . . ."  (AR 178).

4

5       In May 2007, consultative state orthopedist Dr. Dorsey examined

6   Plaintiff, finding her to be a "reliable historian."  (AR 158).

7   Dr. Dorsey reported that following surgery, Plaintiff experienced a

8   fifty percent improvement.  (AR 158).  Plaintiff complained that she had

9   no sensation in her left thumb, a lesser degree of numbness in the other

10  fingers on her left hand, and sharp pain at night that would wake her

11  up, which she would attempt to treat by massaging her hand.  (Id.).  Dr.

12  Dorsey noted that there was no evidence of paravertebral spasm in

13  Plaintiff's cervical spine and that the range of motion of the cervical

14  spine was grossly normal.  (AR 159).  Plaintiff's lumbar spine showed

15  no evidence of splinting or spasm, and again, the range of motion was

16  grossly normal.  (Id.).  Dr. Dorsey reported that Plaintiff's left hand

17  showed decreased sensation to all fingers, but no significant swelling

18  or tenderness, and had the full range of normal motion.  (Id.).

19  Additionally, Plaintiff had a grossly normal range of motion in her

20  shoulders, elbows, wrists, hips, knees and ankles, and her gait was

21  normal.  (AR 159-60).

22

23      In his radiographic examination, Dr. Dorsey noted that Plaintiff's

24  C4-C5 disc space was "markedly decreased" and the C5-C6 disc space was

25  moderately decreased.  (AR 160).  However, Dr. Dorsey found that all of

26  Plaintiff's vertebral heights were within normal limits, and all of the

27  remaining intervertebral disc spaces were normal, with no evidence of

28

osteophyte formation or soft tissue swelling, fracture, or dislocation. (AR 160).  Dr. Dorsey determined that Plaintiff had a "poor clinical result" from her May 2006 operation and suffered from carpal tunnel syndrome in her left hand.  (Id.).

Dr. Dorsey concluded, based on his examination and review of the medical records, that Plaintiff could push, pull, lift and carry twenty pounds occasionally and ten pounds frequently, and that she should be able to stand six hours out of an eight-hour day. (AR 161).  Dr. Dorsey further determined that Plaintiff could bend and stoop occasionally, finger frequently, and grip and grasp on a frequent, but not continuous, basis.  According to Dr. Dorsey, Plaintiff could occasionally engage in feeling activities with her left upper extremity, but could not do any overhead activities with the left upper extremity.  (Id.).

On May 24, 2007, Dr. P.V. Matsuura, a non-examining physician, completed a Physical Residual Functional Capacity Assessment.  (AR 163-69).  Dr. Matsuura referred to Dr. Dorsey's report and reached the same conclusions regarding Plaintiff's physical abilities and limitations. (AR 163-65, 169).

On June 17, 2008, Dr. Mariam Kazemzadeh, who had treated Plaintiff on several occasions at Harbor (see, e.g., AR 227-28, 235, 238), completed a Physical Residual Functional Capacity Questionnaire concerning Plaintiff. (AR 353-56).  Dr. Kazemzadeh diagnosed Plaintiff with C5-C6 paralysis and, referring to a colleague's evaluation, determined that Plaintiff was "permanently, totally disabled."  (AR

353).   According to Dr. Kazemzadeh, Plaintiff's MRI revealed that "[r]esolution of the prior disc protrusion at C4-C5 multilevel disc osteophyte complex [was] causing mild left neural foraminal stenosis [at] several levels."   (AR 353).   Dr. Kazemzadeh determined that Plaintiff could not lift or carry weight with her left arm, and that she had limitations in reaching, handling and fingering with the same arm. (AR 355).   While Dr. Kazemzadeh stated that Plaintiff could climb ladders only rarely, she also reported that Plaintiff could twist, stoop, bend, crouch and climb stairs frequently.   (AR 355). Dr. Kazemzadeh concluded that Plaintiff would likely miss four or more workdays per month due to her condition.   (AR 356).

In October 2008, Plaintiff began therapy with Rio Hondo Mental Health ("Rio Hondo") to address her depression.   (AR 331-37).   As reflected in her Rio Hondo initial assessment report, Plaintiff reported that she felt hopeless and depressed; experienced crying spells, mood swings, and racing thoughts; and had difficulty sleeping and suicidal thoughts.   (AR 331).   Plaintiff was prescribed the antipsychotic Seroquel (AR 50, 327, 329) and the antidepressant Remeron.   (AR 328). At the December 11, 2008 hearing, Plaintiff reported that she went to therapy at Rio Hondo every "couple of weeks."[2]   (AR 48).

\\

\\

---

[2]   At the first hearing, Plaintiff testified that in addition to depression, she also currently experienced pain in her back, left shoulder, left arm, and neck and numbness in her left arm and hand.   (AR 44-48).

On June 22, 2009, Dr. Rocely Ella Tamayo, M.D., conducted an internal medicine consultative examination at the request of the Agency. (AR 763). Dr. Tamayo reported that Plaintiff was restricted in pushing, pulling, lifting, and carrying to about twenty pounds occasionally and about ten pounds frequently with the right hand. (AR 767). Dr. Tamayo also reported that Plaintiff's ability to sit was unrestricted, while standing and walking should be limited to six hours in an eight-hour workday with normal breaks. (Id.). Finally, Dr. Tamayo concluded that Plaintiff was unable to perform heavy lifting or repetitive work with her left hand and could not raise her left upper extremity. (AR 768).

**2. Psychological Examinations**

On June 23, 2009, Plaintiff was evaluated by Barbara Gayle, Ph.D., at the Agency's request. (AR 763). Dr. Gayle concluded that although Plaintiff would have mild cognitive limitations in her ability to work because her overall intellectual capabilities fell in the borderline to low average range, Plaintiff would be able to interact appropriately with others and implement simple three-part tasks without supervision. (See AR 374; see also AR 763-73). However, Dr. Gayle also reported that "[Plaintiff] cannot raise her left arm. She cannot pick up things . . . . She has to raise her left arm with her right hand to be able to shampoo her hair." (AR 764).

On July 7, 2009, Dr. R. Tashjian, M.D., evaluated Plaintiff's medical record at the request of the Agency. (AR 774). Dr. Tashjian found that Plaintiff was moderately limited in her ability to understand

1   and remember detailed instructions, carry out detailed instructions, and

2   interact appropriately with the general public. (AR 774-75). Dr.

3   Tashjian also found that Plaintiff was not significantly limited in her

4   ability to remember locations and work-like procedures, understand and

5   remember very short and simple instructions, carry out very short and

6   simple instructions, maintain attention and concentration for extended

7   periods, perform activities within a schedule, maintain regular

8   attendance, be punctual within customary tolerances, sustain an ordinary

9   routine without special supervision, work in coordination with or

10  proximity to others without being distracted by them, make simple work-

11  related decisions, complete a normal workday and workweek without

12  interruptions from psychologically based symptoms and to perform at a

13  consistent pace without an unreasonable number and length of rest

14  periods, ask simple questions or request assistance, accept instructions

15  and respond appropriately to criticism from supervisors, get along with

16  coworkers or peers without distracting them or exhibiting behavioral

17  extremes, maintain socially appropriate behavior and to adhere to basic

18  standards of neatness and cleanliness, respond appropriately to changes

19  in the work setting, be aware of normal hazards and take appropriate

20  precautions, travel in unfamiliar places or use public transportation,

21  and set realistic goals or make plans independently of others. (AR

22  775).

23

24  **B.    Vocational Expert's Testimony**

25

26      A vocational expert testified at Plaintiff's first hearing. (AR

27  57-68). The expert testified that Plaintiff worked as a sales clerk,

28

telephone solicitor, professional manicurist, and appointment clerk. (AR 60-61). The expert also testified that a hypothetical individual of Plaintiff's vocational profile and RFC would not be able to perform Plaintiff's past relevant work. (AR 65). However, the vocational expert testified that such a person would be able to work as a parking lot booth attendant. (Id.). Finally, the vocational expert testified that adding a requirement that such person would miss four days of work per month due to "pain, complications of depression" would preclude performance of any job existing in the national economy. (AR 715).

**C.   Lay Witness Testimony**

On April 21, 2009, Rudy Carvajal, Plaintiff's friend, submitted a third party function report. (AR 618-33). Mr. Carvajal reported that at that time, he lived in the same house as Plaintiff and occasionally shopped with Plaintiff. (AR 618). According to Mr. Carvajal, from the time Plaintiff wakes up to the time Plaintiff goes to bed, Plaintiff reads, watches television, sometimes attends therapy, and does laundry as needed. (Id.). Mr. Carvajal also reported that before becoming disabled, Plaintiff was able to cook. (AR 619). Mr. Carvajal stated that Plaintiff was "more social" before becoming disabled. (Id.). Mr. Carvajal further stated that Plaintiff now wakes with pain, has trouble dressing herself due to arm pain, and cannot care for her hair without propping her left arm on the wall. (Id.). Plaintiff prepares her own meals, although she usually eats frozen meals and is not able to use pots and pans. (AR 620). Plaintiff makes her own bed and does her own laundry, but she does not have the strength to help with household

11

chores.  (AR 620-21).  According to Mr. Carvajal, Plaintiff is able to drive, walk, and shop for food.  (AR 621).  Plaintiff goes grocery shopping two to three times a week, for thirty minutes at a time.  (AR 621).  Additionally, Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook and make money orders. (Id.).  However, Mr. Carvajal reported that Plaintiff "is always depressed," "has become very withdrawn," and attends two one-hour therapy sessions a week.  (AR 622-23).  Mr. Carvajal reported that Plaintiff has trouble lifting, reaching, completing tasks, concentrating, and using her hands.  (AR 623).  Plaintiff is able to lift up to five pounds but cannot lift her left arm above her head and "cannot complete tasks due to pain," "loses concentration easily," and suffers from "numbness in hands." (Id.).  Plaintiff can walk a quarter of a mile before needing to rest, requires at least a ten minute walk before beginning to walk again, can only pay attention for twenty minutes at a time, and cannot follow written or spoken instructions well.  (Id.).  Mr. Carvajal also reported that Plaintiff has difficulty handling stress and changes in routine.  (AR 624).

   Mr. Carvajal completed another third-party function report on May 13, 2009.  In that report, Mr. Carvajal added that Plaintiff often cries when faced with stressful situations.  (AR 640).  Mr. Carvajal also reported that Plaintiff no longer likes to be around other people. (Id.).

\\

D.   **Plaintiff's Testimony**

    At the first hearing, held in 2008, Plaintiff testified that her health problems began in 2005, with a pain in her back and radiating pain in her left arm.  (AR 43).  According to Plaintiff, her condition steadily worsened until April 2006, when it became so severe that she had no feeling in and could not move her left arm.  (Id.).  At the first hearing Plaintiff also testified that she had not worked since 2006. (AR 37).

    At the second hearing, held in 2011, Plaintiff testified that her condition had not improved.  (AR 425).  Specifically, with respect to her arm and fingers, Plaintiff stated that "they definitely have not gotten better, in some regards they're the same, and in some they're worse."  (Id.).  Plaintiff also stated that "the use of [her] arm is not better, it shakes more, it locks up more" and her index and ring fingers "turn[] white, like there's no circulation at al there, so [she doesn't] know if . . . the nerve is pressed down on something that's causing that but some . . . days [she] deal[s] with that for several hours."  (AR 425).  Further, Plaintiff testified that she was still receiving treatment for her condition, including for pain management, but had not received any vocational training to help her reenter the workforce.  (AR 428-29).

\\

\\

\\

13

# IV.

## THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. § 416.920.  The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. § 416.910.

14

404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)  Is the claimant capable of performing h[er] past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5)  Is the claimant able to do any other work? If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets her burden of establishing an inability to perform the past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's RFC, age, education and work experience.  Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

15

**V.**

**THE ALJ'S DECISION**

Plaintiff filed an application for SSI on January 29, 2007. (AR 22). On December 24, 2008, the ALJ issued a decision denying benefits. (AR 22-29). However, on November 3, 2010, after the Appeals Council denied Plaintiff's request for review, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings. (AR 531). The Court explained that deviation between the VE's testimony regarding the work Plaintiff could perform and the DOT descriptions of that work created an unresolved inconsistency in the evidence. (AR 516). Specifically, the Court concluded that the ALJ failed to explain the deviation from the DOT and failed to elicit testimony from the VE regarding that deviation. (AR 517-24). The Court instructed the ALJ that on remand, he "must determine whether Plaintiff can actually perform the requirements of the positions identified given the limitations imposed by her left upper extremity, or must elicit further testimony from a VE on this topic, or must otherwise reevaluate his decision." (AR 524).

Plaintiff appeared and testified at a second hearing on April 27, 2011. (AR 422-36). An impartial VE also testified at the hearing. (AR 430-41).

On remand, the ALJ correctly noted that "the Appeals Council . . . directed the [ALJ] to determine whether [Plaintiff] could actually perform the requirements of the positions identified, given the

16

limitations imposed by her left upper extremity, [and to] elicit further testimony from a vocational expert on this topic, or . . . must otherwise reevaluate his [d]ecision." (AR 366).  The ALJ also correctly noted that Plaintiff alleged a disability onset date of May 1, 2006. (Id.).

The ALJ then employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled under the Social Security Act prior to July 7, 2009 but was disabled as of that date. (AR 368-78).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of May 1, 2006.  (AR 368).  At step two, the ALJ found that Plaintiff had the severe impairments of "neck/cervical spine pain disorder; left trapezial area pain disorder; left thumb numbness and numbness in fingers of the left hand; and depressive disorder, not otherwise specified."  (Id.).  At step three, the ALJ throughly considered the impairments listed in step two and found that, through the last-insured date, none of them met or medically equaled a listed impairment.  (AR 369).  The ALJ then found that, prior to July 7, 2009, Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work, as defined in 20 CFR 416.967(b), in that she can exert up to 20 pounds of force occasionally and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to move objects.  [Plaintiff] can stand and walk up to 6 hours and sit up to 6 hours in an 8-hour workday

17

with normal breaks. She can perform work that does not require climbing ladders, ropes or scaffolds, or crawling, and no more than frequent climbing of ramps or stairs, stooping, kneeling or crouching. [Plaintiff] is left-hand dominant and can frequently lift, reach, push and pull up to 10 pounds of force and/or up to 20 pounds of force occasionally with her left upper extremity, but not over shoulder height. She can frequently handle objects with her left upper extremity, but not over shoulder height, and can frequently finger and feel objects with her left upper extremity. [Plaintiff] can perform work that does not require concentrated exposure to extreme cold, and exposure to extreme vibration or require operation of machinery with her left upper extremity.

(AR 370). The ALJ also found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to July 7, 2009, to the extent, they are inconsistent with the residual functional capacity assessment." (Id.)

The ALJ next found that, beginning on July 7, 2009, Plaintiff's "work would be limited to the performance of simple, routine, repetitive tasks in a job that does not require more than occasional interaction with the public." (AR 373). The ALJ also found that "beginning on July 7, 2009, [Plaintiff's] allegations regarding her symptoms and

1  limitations are generally credible." (Id.). Ultimately, the ALJ
2  concluded that these changes rendered Plaintiff disabled.

3

4      Next, at step four, the ALJ found that prior to July 7, 2009,
5  Plaintiff could return to her past work as "a telephone solicitor, (DOT
6  No. 299.357-014), sedentary work, semi-skilled SVP 3." (AR 376). The
7  ALJ relied on the VE's testimony in coming to this conclusion. (Id.).
8  The ALJ explained that "[Plaintiff] is able to perform [her past work
9  as a telephone solicitor] as actually and generally performed." (Id.).
10 At step five, the ALJ found that although "[Plaintiff] is capable of
11 performing past relevant work, there are other jobs existing in the
12 national economy that [Plaintiff] is also able to perform." (Id.).

13

14     However, at step four, the ALJ also concluded that "[b]eginning on
15 July 7, 2009, [Plaintiff's] residual functional capacity has prevented
16 [Plaintiff] from being able to perform past relevant work." (AR 377).
17 Finally, at step five, the ALJ also concluded that "[a]s of July 7,
18 2009, considering [Plaintiff's] age, education, work experience, and
19 residual functional capacity, there are no jobs that exist in
20 significant numbers in the national economy that [Plaintiff] can
21 perform." (AR 378). The ALJ relied on the VE's testimony that someone
22 who is "limited to the performance of simple, routine, repetitive tasks
23 in a job that does not require more than occasional interaction with the
24 public" could not perform any jobs that exist in the national economy.
25 (AR 441). Accordingly, the ALJ found that "[Plaintiff] was not disabled
26 prior to July 7, 2009, but became disabled on that date and has
27 continued to be disabled through the date of [the ALJ decision]." (Id.)
28

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

# VII.

## DISCUSSION

Plaintiff contends the ALJ erred for two reasons. First, Plaintiff contends that the ALJ improperly determined that Plaintiff was not disabled prior to July 7, 2009, i.e., Plaintiff challenges the ALJ's finding that Plaintiff's onset date was July 7, 2009. (Compl. Mem. at

8).  Specifically, Plaintiff argues that "[t]he ALJ failed to assign an
onset date that has anything to do with the record beyond the date on
which a cold medical record review took place.  The Court should reverse
and remand for the setting of an onset date that correlates [with] and
has an explanation for the date selected." (Id.).  Second, Plaintiff
alleges that the ALJ improperly reassessed Plaintiff's RFC on remand.
(Compl. Mem. at 9-14).  Plaintiff contends that, on remand, the ALJ was
instructed to determine whether Plaintiff can perform the requirements
of the positions identified by the VE given Plaintiff's RFC.  (Id.).
Specifically, Plaintiff argues that "[o]nce this Court affirmed the
residual functional capacity findings from the first ALJ decision, the
Commissioner lacked the discretion to change the residual functional
capacity finding on remand except in unusual circumstances.  The ALJ
pointed to no new and material evidence or change in the law that would
permit him to reassess residual functional capacity on remand." (Compl.
Mem. at 13).

       For the reasons discussed below, the Court finds that the ALJ
failed to adequately support his conclusion that Plaintiff was disabled
as of July 7, 2009 rather than as of an earlier date.  Accordingly, the
Court orders that judgment be entered reversing the decision of the
Commissioner and remanding this matter for a reevaluation of Plaintiff's
disability onset date, consistent with this decision.

\\
\\
\\
\\

21

A.   **The Disability Onset Date Was Not Supported By Substantial Evidence**

According to Plaintiff, "[t]he ALJ failed to assign an onset date that has anything to do with the record beyond the date on which a cold medical record review took place." (Id.). Plaintiff argues that the ALJ's decision should be reversed and remanded "for the setting of an onset date that correlates [to the record] and has an explanation for the date selected." (Id.). Defendant argues that "with the assistance of the examining psychologist and State agency psychiatrist, the ALJ was able to confirm that Plaintiff's mental limitations existed as of July 7, 2009." (Ans. Mem. at 4). However, the Court finds that the disability onset date was not supported by substantial evidence.

An ALJ's determination of a plaintiff's disability onset date must be supported by substantial evidence. Swanson v. Secretary of Health and Human Services, 763 F.2d 1061, 1064 (9th Cir. 1985). In Swanson, the plaintiff challenged the ALJ's determination of an onset date as unsupported by substantial evidence. The Ninth Circuit rejected the claim that an earlier date should have been set, stating:

> While the ALJ could have chosen an earlier onset date based on the conflicting evidence as to appellant's previous disorders, the question we face is whether the chosen onset date is supported by substantial evidence, not whether an earlier date could have been supported.

22

1 _Id._ Accordingly, where a plaintiff alleges that her actual disability
2 onset date occurred earlier than that found by the ALJ, the ALJ's
3 determination will be upheld if it is supported by substantial evidence.

4

5      Further, under SSR 83-20, factors relevant to the determination of
6 the onset date "include the individual's allegations, the work history,
7 and the medical evidence." These factors are to be considered together;
8 however, a plaintiff's allegations or the last date that the plaintiff
9 worked "is significant in determining onset only if it is consistent
10 with the severity of the condition(s) shown by the medical evidence."
11 _Id._, 1983 WL 31249, at *1. However, "[i]f the 'medical evidence is not
12 definite concerning the onset date and medical inferences need to be
13 made, SSR 83-20 requires the administrative law judge to call upon the
14 services of a medical advisor and to obtain all evidence which is
15 available to make the determination.'" _Armstrong v. Comm'r of Soc. Sec._
16 _Admin._, 160 F.3d 587, 590 (9th Cir. 1998) (remanding case "to the ALJ
17 with instruction to call a medical expert to determine when [plaintiff]
18 became disabled" where the record was "unclear" as to onset date); _see_
19 _also_ _Morgan v. Sullivan_, 945 F.2d 1079, 1082-83 (9th Cir. 1991)
20 (reversing in part the ALJ's determination of an onset date because the
21 ALJ failed to rely on the assistance of a medical expert).
22 Additionally, "where medical testimony is unhelpful . . .", the ALJ
23 should "explor[e] lay evidence including the testimony of family,
24 friends or former employers to determine the onset date." _Armstrong_,
25 160 F.3d at 590.

26

27      Here, the ALJ considered four factors in determining Plaintiff's
28 disability onset date. Specifically, the ALJ considered Plaintiff's (1)

1  activities of daily living; (2) social functioning; (3) concentration,
2  persistence or pace; and (4) episodes of decompensation.  (AR 369).
3  With respect to the first three factors, the ALJ found that "there was
4  insufficient evidence to find that [Plaintiff] had any limitation in
5  these areas prior to July 07 [sic], 2009." (Id.).  With respect to the
6  fourth, the ALJ found that "[Plaintiff] has experienced no episodes of
7  decompensation, which have been of extended duration." (Id.).  However,
8  the ALJ also found that "there is evidence that as of July 07 [sic],
9  2009, [Plaintiff] had moderate difficulties with social functioning and
10  concentration, persistence or pace.  However, activities of daily living
11  were found to be none to mild and there were no episodes of
12  decompensation that have been of extended duration." (Id.).  The ALJ
13  also reviewed Plaintiff's medical record before determining her
14  disability onset date.  However, the ALJ's conclusion that Plaintiff's
15  disability onset date was July 7, 2009 is not supported by substantial
16  evidence.

18  **1.   Plaintiff's Physical Condition**

20    In concluding that Plaintiff was not disabled prior to July 7,
21  2009, the ALJ found that "[o]bjective medical evidence does not fully
22  support [Plaintiff's] claims." (AR 371).  Specifically, the ALJ found
23  that while there was support for a disability onset date of July 7,
24  2009, the record did not support a disability onset date prior to July
25  7, 2009.

27    The ALJ explained that Plaintiff "underwent a consultative
28  orthopedic evaluation by Dr. Thomas Dorsey, M.D., in May 2007, during

24

which a cervical spine examination revealed no evidence of paravertebral spasm; grossly normal range of motion; and a scar on the left side anteriorly." (Id.).  The ALJ emphasized that Dr. Dorsey found that "results [of an examination of Plaintiff's left hand] indicated decreased sensation to all fingers compared to the opposite side; however, the thumb sensation was more markedly decreased, and the left thumb versus small finger sensory test was positive." (See id.; see also AR 159).  Additionally, as the ALJ noted, "the results of [Plaintiff's] neurological examination were normal, as well as [Plaintiff's] extremity range of motion." (See id.; see also AR 160.

The ALJ also observed that on December 27, 2006, Plaintiff's physical therapist reported that Plaintiff was able to assume correct sitting and standing posture after receiving treatment. (See AR 371; see also AR 183).  The ALJ also noted that "magnetic resonance imaging of [Plaintiff's] cervical spine, obtained in August 2006, illustrated resolution of the prior disc protrusion at C4-5 and multi-level disc osteophyte complex causing only mild left neural foraminal stenosis at several levels." (See AR 371; see also AR 257, 278).  Further, the ALJ observed that "[a] follow up magnetic resonance imaging of [Plaintiff's] cervical spine done on August 10, 2009 demonstrated only slight worsening when compared to the prior exam." (See AR 371; see also AR 802-03).  The ALJ also reasoned that although Plaintiff's condition improved with therapy, she voluntarily stopped receiving treatment in January of 2009. (See AR 372; see also AR 798-99).  According to the ALJ, Plaintiff's failure to follow through on her therapist's advice to continue treatment "does not suggest an individual willing to attempt any treatment modality to relieve pain." (AR 372).

1    Finally, the ALJ gave "considerable weight" to the opinion of Dr.
2  Rocely  Ella  Tamayo,  M.D.,  who  conducted  an  internal  medicine
3  consultative examination at the request of the Agency on June 22, 2009.
4  (See AR 375; see also AR 763).  As the ALJ noted, Dr. Tamayo reported
5  that Plaintiff was restricted in pushing, pulling, lifting, and carrying
6  about twenty pounds occasionally and about ten pounds frequently with
7  the right hand.  (See AR 375; see also AR 767).  Dr. Tamayo also
8  reported  that  Plaintiff's  ability  to  sit  was  unrestricted,  while
9  standing and walking should be limited to six hours in an eight-hour
10  workday with normal breaks.  (AR 375).  Finally, as the ALJ observed,
11  Dr. Tamayo concluded that Plaintiff was unable to perform heavy lifting
12  or repetitive work with her left hand and could not raise her left upper
13  extremity.  (See AR 375; see also AR 768).

14

15    **2.    Plaintiff's Psychological Condition**

16

17    As for Plaintiff's psychological condition, the ALJ accurately
18  noted that on June 23, 2009, Plaintiff was evaluated by Barbara Gayle,
19  Ph.D., at the Agency's request.  (See AR 374; see also AR 774).  The ALJ
20  emphasized Dr. Gayle's report that Plaintiff's IQ fell in the borderline
21  to low average range and would be able to interact appropriately with
22  others and implement simple three-part tasks without supervision.  (AR
23  374; see also AR 763-773).  However, the ALJ failed to note that Dr.
24  Gayle also reported that "[Plaintiff] cannot raise her left arm.  She
25  cannot pick up things. . . .  She has to raise her left arm with her
26  right hand to be able to shampoo her hair."  (AR 764).

27

28

26

1    Finally, in setting Plaintiff's disability onset date, the ALJ gave
2  the most weight to the opinion of non-examining consultant Dr. R.
3  Tashjian, M.D., who evaluated Plaintiff's record on July 7, 2009. (AR
4  374).  Indeed, the ALJ opined that "[a]pplication of Dr. Tashjian's
5  opinion with respect to [Plaintiff's] functional limitations is pivotal
6  in  determining  [Plaintiff's]  residual  functional  capacity  and,
7  therefore, her subsequent ability to perform past relevant work or other
8  work pursuant to the Vocational Expert's testimony." (AR 375).  As the
9  ALJ noted, Dr. Tashjian found that Plaintiff was moderately limited in
10 her ability to understand and remember detailed instructions, carry out
11 detailed  instructions,  and  interact  appropriately  with  the  general
12 public.  (See id.; see also AR 774-776).  The ALJ did not give
13 significant weight to any evaluations conducted after July 7, 2009.
14 (See AR 375).

15
16    **3.   Analysis**
17

18    The Swanson decision controls the outcome here.  As discussed
19 above, the plaintiff in Swanson alleged that his actual disability onset
20 date was earlier than the onset date found by the ALJ.  The Ninth
21 Circuit explained that an ALJ's determination of a disability onset date
22 will be upheld if it is supported by substantial evidence.  Swanson, 763
23 F.2d at 1064.  The Ninth Circuit then rejected the claim that an earlier
24 date should have been set, stating that "[w]hile the ALJ could have
25 chosen an earlier onset date based on the conflicting evidence as to
26 appellant's previous disorders, the question we face is whether the
27
28

1  chosen onset date is supported by substantial evidence, not whether an

2  earlier date could have been supported."[4]   Id.

3

4      Here, however, the disability onset date of July 7, 2009 is not

5  supported by substantial evidence.  The Court finds that the ALJ relied

6  upon medical evidence that is not definitive concerning the onset date.

7  Armstrong, 160 F.3d at 590.

8

9      Even if the ALJ's summary of the record is accurate, it does not

10 support a disability onset date of July 7, 2009 instead of an earlier

11 date.  As discussed above, the ALJ arrived at the July 7, 2009 onset

12 date by surveying medical exams that occurred at several dates prior to

13 July 7, 2009 and concluding that Plaintiff was not disabled at the time

14 of those exams.  Notably, the ALJ found that Plaintiff became disabled

15 on July 7, 2009 because that is when a non-examining physician reported

16 that Plaintiff would have moderate difficulty appropriately interacting

17 with others.  (See AR 375; see also AR 774-776).  The ALJ also

18 empathized that on June 23, 2009, an examining doctor concluded that

19 Plaintiff would be able to interact appropriately with others.  (See AR

20 374; see also AR 763-773).  Further, as discussed above, the ALJ found

21 that Plaintiff's overall RFC did not change as of July 7, 2009, except

22 that Plaintiff could no longer perform tasks that "require more than

23 occasional interaction with the public."  (AR 373).

24

25     Although the ALJ relied upon the non-examining physician's report

26 that Plaintiff was unable to interact with others on July 7, 2009, there

27      [4]   The Swanson court also noted that the onset date is not

28 necessarily the same as the date of diagnosis.  Id. at 1065.

is a lack of evidence to support the conclusion that Plaintiff was unable to interact with the public as of July 7, 2009 but not June 23, 2009. Indeed, the June 23, 2009 report is not definite concerning the onset date. The report merely states that "[o]bservation suggests [Plaintiff] is able to interact appropriately with others." (AR 773) (emphasis added). No other medical reports arrive at this conclusion. Absent evidence of a triggering event or some other explanation of deteriorating mental health between June 23, 2009 and July 7, 2009, the record does not demonstrate that Plaintiff was disabled on July 7, 2009 but not a few weeks prior to that.

Additionally, given the above, it is clear that the ALJ inferred Plaintiff's disability onset date. However, SSR 83-20 provides that "[a]t the hearing, the administrative law judge . . . should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made." Id., 1983 WL 31249, at *1; see also Armstrong, 160 F.3d at 589-90. The Ninth Circuit has held that "in this context 'should' means 'must.' If the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor to obtain all evidence which is available to make the determination." Armstrong, 160 F.3d at 590 (internal quotation marks and citations omitted); see also DeLorme v. Sullivan, 924 F.2d 841, 848 (9th Cir. 1991) ("In the event that the medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the

1  services of a medical advisor and to obtain all evidence which is

2  available to make the determination.  If medical evidence is not

3  available, then lay evidence may be obtained.").  However, the ALJ did

4  not call on the services of a medical advisor at the hearing.

5

6      As discussed above, the ALJ improperly determined that Plaintiff's

7  disability onset date was July 7, 2009.  The Court therefore remands for

8  a reevaluation of Plaintiff's disability onset date consistent with this

9  decision.[5]  See also Nolen v. Sullivan, 939 F.2d 516, 520 (7th Cir.

10  1991) (where Secretary failed to provide adequate reason for

11  determination of onset date of disability, case remanded for

12  redetermination of onset date).

13

14  **B.   <u>The ALJ Appropriately Reevaluated Plaintiff's RFC</u>**

15

16      Plaintiff also contends that, on remand, the ALJ was instructed to

17  determine whether Plaintiff can perform the requirements of the

18  positions identified by the VE given Plaintiff's RFC. (Compl. Mem. at

19  9-14).  Specifically, Plaintiff argues that "[o]nce this Court affirmed

20  the residual functional capacity findings from the first ALJ decision,

21  the Commissioner lacked the discretion to change the residual

22  functional capacity finding on remand except in unusual circumstances.

23  The ALJ pointed to no new and material evidence or change in the law

24  that would permit him to reassess residual functional capacity on

25  remand." (Compl. Mem. at 13).  However, Plaintiff's claim fails.  This

26

27      [5]  The Court observes that, on remand, the ALJ may solicit the
opinion of a medical expert "to obtain all evidence which is available
to make the determination" of Plaintiff's disability onset date.  See
28  SSR 83-20, 1983 WL 31249, at *1; see also Armstrong, 160 F.3d at 590.

1   Court's prior order required that the ALJ must, "[o]n remand, . . .

2   determine whether Plaintiff can actually perform the requirements of the

3   positions identified given the limitations imposed by her left upper

4   extremity, or must elicit further testimony from a VE on this topic, <u>or</u>

5   <u>must otherwise re-evaluate his decision</u>."  (AR 412) (emphasis added).

6   Thus, the Court did not preclude the ALJ from reassessing Plaintiff's

7   RFC on remand.

8

9       Finally, Plaintiff claims that the law of the case doctrine

10  prohibits reevaluation of an RFC on remand.  Specifically, according to

11  Plaintiff, a court is precluded from reconsidering issues that have

12  already been decided by the same court or a higher court in the same

13  case.  (Compl. Mem. at 12).  However, the law of the case doctrine is

14  "not an inexorable command."  <u>United States v. Van Alstyne</u>, 584 F.3d

15  803, 813 (9th Cir. 2009).  As the Ninth Circuit has consistently

16  explained, "[a] court may depart from the law of the case if . . . the

17  first decision was clearly erroneous."  <u>See</u> <u>United States v. Scrivner</u>,

18  189 F.3d 825, 827 (9th Cir. 1999).  A court may depart from the law of

19  the case where there are changed circumstances or the evidence on remand

20  is substantially different.  <u>United States v. Alexander</u>, 106 F.3d 874,

21  876 (9th Cir. 1997).

22

23      Here, there was significantly more medical evidence on remand,

24  including mental health treatment records, a psychological evaluation,

25  an orthopedic evaluation, and an internal medicine evaluation.  (AR

26  347-352, 755-773, 873-877).  Plaintiff cites <u>Ischay v. Barnhart</u> for the

27  proposition that when a case is remanded due to an error at step five

28  of the five step evaluation process, an ALJ cannot change a finding he

31

made at step one through four.  (See Compl. Mem. at 12) (citing Ischay
v. Barnhart, 383 F. Supp. 2d 1199, 1218-19 (C.D. Cal. 2005)).  However,
Ischay involved a remand order so narrow as to only permit reevaluation
of step five.  Id. at 1219 (noting that "it was clear that the remand
was solely for purposes of permitting the ALJ to re-determine whether
Plaintiff was disabled at step five") (emphasis in original). As
discussed above, this Court's remand order was much broader.  (See AR
412) (allowing ALJ to "otherwise re-evaluate his decision" on remand).
Therefore, the law of the case doctrine would not prohibit the ALJ from
reconsidering Plaintiff's RFC on remand.  Accordingly, it was
appropriate for the ALJ to reassess Plaintiff's RFC.  Alexander, 106
F.3d at 876.  Plaintiff's second claim fails.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

**VIII.**

**CONCLUSION**

Consistent with the foregoing, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for reevaluation of Plantiff's disability onset date, consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 30, 2013.

/S/

_____
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

33